IN THE MATTER OF THE JUDICIAL SETTLEMENT OF THE ACCOUNTS OF THE EXECUTORS OF WILLIAM TILDEN, DECEASED.

*Executors — construction of a clause in a will providing for commissions differing from the legal ones — commissions on real estate partitioned — the settlement of an executor's account is conclusive as against an application for changes in the commissions allowed therein.*

A testator authorized his executors to receive from his estate, in addition to their actual and necessary disbursements, and in lieu and exclusion of all other commissions and compensation, the following commissions, viz.: "On all sums to be received from said partners as my capital in said partnership, and on all interest and income on investments in the public debt of the United States or in county bonds, and on the proceeds of sale of real estate one

per cent of the amount received, and on all sums received for personal property sold, or rents or the collection of debts owing to me, or for the income of other funds or investments, five per cent of the amount received."

*Held*, that the executors were entitled to receive commissions at the rate of five per cent on moneys received by them from the United States, in payment of government bonds which were owned by the testator at the time of his death, as being a collection of a debt owing to him. (DANIELS, J , dissenting.)

That the executors were not entitled to any commissions upon the value of real estate which was partitioned among the four sons of the testator, by deeds in which the executors and widow joined as grantors with the sons; that such actual partition did not constitute a sale of the real estate.

That the settlement of the accounts of executors being conclusive evidence against all the parties who were duly cited or appeared, it was not proper upon a second settlement in reference to further assets, which had come into their hands, to change the amount of commissions allowed on the first and prior settlement.

APPEAL from parts of a decree of the surrogate, entered upon the final accounting of the executors, refusing to allow commissions claimed by them.

*Joseph H. Choate*, for the executors, appellants.

*W. S. Mac Farlane*, for B. B. Tilden and E. P. Kennard, trustees, respondents.

VAN BRUNT, P. J.:

It appears that since the death of the testator, in 1869, there have been six successive judicial settlements of the accounts of the executors covering the transactions during six successive periods. The decree on the fifth accounting was entered in June, 1885, and the decree on the sixth accounting was entered on the 6th of December, 1886, and from parts of the latter decree this appeal is taken. The executors received from the United States government during the period of the fifth accounting $65,000, in payment of government bonds which were owned by the testator at the time of his death, and were paid by the government during said period. Into the fifth accounting that item entered, and the executors charged and were allowed one per cent upon the amount so paid by the government. During the period of the sixth accounting the executors received from the United States government $25,000 under like circumstances, and the executors claimed five per cent

as the commission on this $25,000 of United States bonds under the eighteenth clause of the will, which provides as follows: ·

"*Eighteenth.* In lieu and exclusion of all other commissions and compensation to my executors for performing their duties under this will, and in addition to their actual and necessary disbursements and expenses, I authorize them to receive from my estate the following commissions, namely: On all sums to be received from my said partners as my capital in said partnership, and on all interest and income on investments in the public debt of the United States, or in county bonds and on the proceeds of sales of real estate, one per cent of the amount received, and on all sums received for personal property sold, or rents or the collection of debts owing to me, or for the income of other funds or investments, five per cent of the amount received, and on all sums of money invested by them two per cent of the amount thereof, such commissions to be in full for such services, and the amount to be divided among my executors, from time to time, equitably, in proportion to their respective services."

During the period covered by the fifth accounting, an agreement, was made between the four sons of the testator for a division among themselves of certain real estate left by the testator, the youngest son having become of age. To carry out that agreement deeds of conveyance were made by the executors and Elmira S. Tilden, widow of the testator, three of the four heirs being grantors and the other heir being grantee, proper words being used to express the execution by the executors of the power of sale, the release by the widow of her dower and the partition between the said four heirs. The executors claimed commissions upon the valuation placed upon said real estate under the provisions of the said eighteenth clause of the will. The learned surrogate disallowed the commissions at the rate of five per cent upon the United States bonds, and also the claim for commissions upon the value of the real estate partitioned.

The provisions of the eighteenth clause of the will referred to entitled the executors for the collection of debts owing to the testator to receive five per cent of the amount received as compensation. The United States bonds which were held by the testator at the time of his death were part and parcel of the interest bearing

obligations of the United States, and formed part of the public debt. In the use of the word " debts " by the testator in the clause referred to, no distinction is made in the character of the obligations or debts which might be owing to the testator. The language is that the executors are to be entitled to a commission of five per cent for the collection of debts owing to the testator. This language necessarily includes each and every obligation for the payment of money which was held by the testator and which was subsequently collected by the executors. There is no meaning of the word " debt " which excludes the interest-bearing obligations of the United States or of the State. They were part and parcel of the public debt, and recognized as such by the statutes of the United States in reference thereto. The bonds of the United States were as much of a debt as the bonds of any corporation which issued its obligations for the payment of money, or as the obligations of any individual who issued his commercial paper payable at a future day. It would seem, therefore, that the money collected from the United States upon the payment of its obligations came within the provisions of the section referred to, and the executors were entitled to commissions thereon at the rate of five per cent.

It does not follow, however, that the executors can collect commissions at the rate of five per cent on the proceeds of the bonds included in the fifth accounting, in which they have charged and been allowed at the rate of one per cent for collection. The learned surrogate has based his decision in reference to this matter upon the ground that this compensation provided for in the will in excess of that allowed by law, is looked upon as a legacy, and a legacy is not discharged until paid. But it does not seem to us that this is a correct view. The provisions in the will were intended to be as compensation for services rendered, to be in no respect a gift, but an authority to charge for their services a certain sum. It is sufficient to say that section 2742 of the Code of Civil Procedure provides that a settlement of the account of an executor is conclusive evidence against all the parties who were duly cited or appeared; that the items allowed to the accounting party for money paid to creditors, legatees and next of kin for necessary expenses and for services are correct. Therefore the decree entered upon the fifth accounting is conclusive evidence that the allowances therein made

to the executors for their services were correct. As long as that decree stands, it is difficult to see upon what principle the executors can claim additional compensation for services rendered which are included in that accounting.

The next question relates to the exception taken to the action of the surrogate in refusing commissions upon the real estate partitioned. The sons of the testator were the owners of the fee of the real estate subject to certain powers given to the executors under the will. The executors had no power of division of the real estate. The sole power of division contained in the fourteenth clause related to the division of personal estate and the power of sale therein contained was to sell and convert into money or personal securities or in order to perform, fulfill and keep any contract, agreement or obligation that the testator might be under at the time of his decease. There-fore, as far as the real estate was concerned, the executors could only sell for the purpose of conversion into money or personal securities. This was not done. The real estate was not sold for the purpose of being converted into money or personal securities nor was it in fact sold at all. The owners of this real estate divided it amongst them selves under an agreement made between themselves, and in the carrying out of that agreement, the heirs executed the deed and the widow released her dower, the executors joining to convey any title they might have, which was none, and perhaps the only effect of their action being an estoppal upon any subsequent demand on their part to execute the power of sale contained in the will. The fact that for purposes of bookkeeping they entered the appraised prices of the real estate in their accounts does not alter the legal aspects of the case. They did not sell for money; they received no money, and their conveyance added no weight to the partition which the owners of the fee made among themselves. This, therefore, being no execution of the power of sale contained in the will, the executors are not entitled to commissions upon the appraised value of the real estate. The executors were, therefore, entitled to commissions at the rate of five per cent upon the $25,000 bonds were entitled to no additional commission upon the $65,000 embraced within the previous accounting, and were not entitled to commissions upon the real estate partitioned.

The order of the surrogate should be modified accordingly, and as modified affirmed, without costs of this appeal to either party.

BRADY, J., concurred.

DANIELS, J.:

I concur except as to the commissions on the United States bonds. They do not seem to be debts due or owing to the testator, in the sense in which he referred to debts owing to him in his will. That he did not understand these bonds to be debts owing to him, and therefore chargeable with commissions at the rate of five per cent, seems also to follow from the allowance of no more than a one per cent commission for collecting their coupons. The same reason as would reduce the commission to one per cent on the coupons indicates the intention of the testator to have been that only a like commission should be reserved from the proceeds of the bonds. In all other respects I agree to the opinion of the presiding justice.

Order modified as directed in opinion, and affirmed as modified, without costs of appeal to either party.